LYONS & FLOOD, LLP
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

Attorneys for Plaintiff
GREAT EASTERN SHIPPING CO. LTD.

RECEIVED OCT 02 2007 U.S.D.C., S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREAT EASTERN SHIPPING CO. LTD.,

                    Plaintiff,

- against -

PHOENIX SHIPPING CORPORATION
and PHOENIX SHIPPING PTY LTD.,

                    Defendants.
------------------------------------------------------------X

**ECF CASE**

07 Civ. 8373 (DLC)

## AMENDED VERIFIED COMPLAINT

Plaintiff GREAT EASTERN SHIPPING CO. LTD. ("GREAT EASTERN"), by its attorneys, Lyons & Flood, LLP, as and for its Verified Complaint against defendants, PHOENIX SHIPPING CORPORATION and PHOENIX SHIPPING PTY LTD., alleges upon information and belief as follows:

    1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the action falls within the Court's subject matter jurisdiction pursuant to 28 USC §§ 1331 and 1333. Subject matter jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 USC § 201 *et seq.* and/or the Federal Arbitration Act, 9 USC § 1 *et seq.*

    2.     At all material times, plaintiff GREAT EASTERN was and still is a

corporation organized and existing under the laws of a foreign country, and was the owner of the M/V JAG RAVI ("the Vessel").

3.  Upon information and belief, at all material times, defendant PHOENIX SHIPPING CORPORATION ("PHOENIX DELAWARE") was and still is a corporation organized and existing under the laws of the State of Delaware, with a registered office at Suite 400, 2711 Centerville Road, Wilmington, Delaware, but which to plaintiff's information and belief is occupied by an entity called Corporate Services Company, which is a company that conducts registration agency services for companies registered in Delaware, and with an office and principal place of business at P.O. Box 211, Umdloti Beach 4350, 77 Bellamount Road, KZN, Republic of South Africa.

4.  Upon information and belief, at all material times, defendant PHOENIX SHIPPING PTY LTD. ("PHOENIX SA") was and still is a corporation organized and existing under the laws of a foreign country, South Africa, with an office and principal place of business at P.O. Box 211, 77 Bellamount Road, Umdloti Beach 4350, KZN, Durban, Republic of South Africa.

5.  Upon information and belief, PHOENIX DELAWARE maintains no office or place of business in Delaware but rather uses the same office and place of business as PHOENIX SA in South Africa.

6.  Upon information and belief, PHOENIX DELAWARE maintains no employees in Delaware but rather uses the same employees as PHOENIX SA in South Africa.

7.  The Charter Party identified in ¶ 13 below and that forms the subject matter of the Amended Verified Complaint calls for all correspondence with PHOENIX

DELAWARE to be communicated in care of "PHOENIX SHIPPING , Umdloti as Managers, PO Box 190, Umdloti Beach, 4350, KZN, South Africa ……..all@phoenixshipmanagement" which plaintiff believes to be PHOENIX SA.

8. Upon information and belief, defendants PHOENIX DELAWARE and PHOENIX SA have common ownership.

9. Upon information and belief, defendant PHOENIX DELAWARE is under capitalized according the 2006 Annual Franchise Tax Report filed by defendant.

10. Upon information and belief, defendant PHOENIX SA provides performance guarantees on request to third-parties for charter parties entered into by defendant PHOENIX DELAWARE.

11. Upon information and belief, bunkers (fuel oil) purchased for vessels chartered by PHOENIX DELAWARE are purchased for the account of PHOENIX SA.

12. Upon information and belief, PHOENIX DELAWARE is the alter ego of PHOENIX SA in that PHOENIX DELAWARE was and is so controlled and manipulated that it was and is a mere instrumentality of PHOENIX SA. As a result, plaintiff respectfully requests the Court to pierce the corporate veils of the defendants.

13. By an amended NYPE form time charter as evidenced by a recap dated May 13, 2007, (the "Charter Party"), defendant PHOENIX DELAWARE time chartered the Vessel from plaintiff GREAT EASTERN for a single time charter trip for a period of about forty-five to sixty days for the carriage of a variety of cargoes with a then present intent of a voyage from North China to Turkey or the Eastern Mediterranean.

14. The Vessel was delivered to PHOENIX DELAWARE on or about May 13, 2007, in Guangzhou, China.

15. Upon information and belief, PHOENIX DELAWARE in turn, sub-chartered the Vessel to a third-party charterer.

16. At PHOENIX DELAWARE's directions, on or about May 24, 2007, cargoes of steel products, bagged ferro silicon, bagged graphite, bagged bauxite, and on deck cargoes were loaded aboard the Vessel in the port of Tianjin, China. Additional cargoes were loaded aboard the Vessel in Qingdao, China from about June 2, 2007.

17. On or about June 5, 2007, the Vessel proceeded on its voyage to the discharge ports of Limassol, Cyprus, Diliskelesi, Turkey, and Novorossiysk, Russia.

18. The Vessel arrived at Diliskelesi on about 14 July 2007. Discharge at Diliskelesi commenced on or about 18 July 2007. During discharge at Diliskelesi, cargo receivers sought security from GREAT EASTERN for alleged damage to certain cargoes (the "Diliskelesi cargo"). To date, the total amount of claims notified with regard to the Diliskelesi cargo is $2,412,141.32. Plaintiff reserves the right to amend the allegations set forth herein if and when additional claims are asserted in regard to the cargo discharged at Diliskelesi.

19. In response to the Diliskelesi cargo claims, GREAT EASTERN provided security in the form of Letters of Undertaking issued by its Protection and Indemnity Club ("Club LOU"). To date, the amount of security provided for the Diliskelesi cargo is $2,410,851.32. Plaintiff reserves the right to amend the allegations set forth herein if and when additional security is provided in regard to the cargo discharged at Diliskelesi.

20. Upon information and belief, plaintiff anticipates that proceedings will be brought against GREAT EASTERN by cargo receivers in Turkey with regard to the alleged Diliskelesi cargo damage.

21. The Vessel arrived at Novorossiysk in early August 2007 and commenced discharge on or about 6 August 2007. During discharge at Novorossiysk, Russia, additional allegations of cargo damage were made against GREAT EASTERN (the "Novorossiysk cargo"). To date, the total amount of claims notified with regard to the Novorossiysk cargo is approximately $3,000,000.00. Although no security has been issued yet with respect to the Novorossiysk cargo, upon information and belief, security may have to be provided soon by GREAT EASTERN with respect to the Novorossiysk cargo claims. Plaintiff reserves the right to amend the allegations set forth herein if and when additional claims are asserted in regard to the cargo discharged at Novorossiysk and/or security is provided in regard to the cargo discharged at Novorossiysk.

22. Upon information and belief, plaintiff anticipates that proceedings may be brought against GREAT EASTERN by cargo receivers with regard to the alleged Novorossiysk cargo damage.

23. Upon information and belief, the alleged damage to the Diliskelesi and Novorossiysk cargoes was caused by PHOENIX DELAWARE's negligent loading of these cargoes.

24. Upon information and belief, the alleged damage to the Diliskelesi and Novorossiysk cargoes was caused by PHOENIX DELAWARE's negligent stowage of these cargoes.

25. Upon information and belief, the alleged damage to the Diliskelesi and Novorossiysk cargoes was caused by PHOENIX DELAWARE's negligent discharge of these cargoes.

26. Both defendants cannot be found within this District within the meaning

of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but upon information and belief, defendants have, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court held in the hands of garnishees.

## COUNT ONE

27. Plaintiff GREAT EASTERN repeats and realleges the allegations stated in paragraphs 1 through 26 of the Amended Verified Complaint as if set forth more fully herein.

28. Clause 41 of the Charter Party incorporates the NYPE Interclub Agreement 1996 ("Interclub Agreement") under which liability for cargo claims as between plaintiff GREAT EASTERN and defendant PHOENIX DELAWARE are to be apportioned and settled in accordance with a defined schedule. Pursuant to this schedule, defendant PHOENIX DELAWARE, as charterer of the Vessel, shall be 100% liable for cargo claims arising out of the loading, stowage, lashing, discharge, or other handling of cargo, unless the cargo claims arise out of the unseaworthiness of the Vessel. The alleged cargo claims did not arise out of the unseaworthiness of the Vessel. Under the Interclub Agreement, the term "cargo claims" has been defined to include (a) loss, damage, or shortage to cargo and (b) all legal, Club correspondents' and experts' fees and costs reasonably incurred in the defense of the cargo claims.

29. Since liability under the Interclub Agreement for the alleged cargo claims is, as per the defined schedule, the full and sole responsibility of PHOENIX DELAWARE, GREAT EASTERN is entitled to seek recovery under the Interclub Agreement from defendant PHOENIX DELAWARE for the full amount of the alleged

loss, damage, and shortage to the cargo and all legal, Club correspondents' and experts' fees and costs reasonably incurred in the defense of the cargo claims.

## COUNT TWO

30. Plaintiff GREAT EASTERN repeats and realleges the allegations stated in paragraphs 1 through 29 of the Amended Verified Complaint as if set forth more fully herein.

31. Pursuant to the Bagged Cargo Clause of the Charter Party, cargo claims arising as a consequence of loss, shortage and/or damage to bagged cargo are to be settled directly by PHOENIX DELAWARE without recourse against or indemnity from GREAT EASTERN, unless the cargo claims arise out of the unseaworthiness of the Vessel. The alleged claims for the bagged cargo did not arise out of the unseaworthiness of the Vessel.

32. Defendant PHOENIX DELAWARE has wrongfully, and in breach of the Charter Party, refused to settle the claims for alleged damage to bagged cargo.

33. As a result of this breach, plaintiff GREAT EASTERN has incurred the expenses and costs of handling the bagged cargo claims and arranging for and posting of security for these claims.

## COUNT THREE

34. Plaintiff GREAT EASTERN repeats and realleges the allegations stated in paragraphs 1 through 33 of the Amended Verified Complaint as if set forth more fully herein.

35. Defendant PHOENIX DELAWARE has wrongfully deducted charter hire, due and owing to GREAT EASTERN, with respect to (a) an alleged period of delay

occasioned by the presentation of an incorrect cargo manifest to the Master on arrival in Turkey and (b) alleged delays caused by GREAT EASTERN's refusal to permit discharge from the holds using two cranes at Diliskelesi. Defendant PHOENIX DELAWARE is claiming deductions from hire in the amount of (a) $77,049.12 and (b) $101,532.93, respectively.

36. Defendant PHOENIX DELAWARE has wrongfully, and in breach of the Charter Party, failed to pay $178,582.05 in hire payments due and owing to plaintiff GREAT EASTERN.

## COUNT FOUR

37. Plaintiff GREAT EASTERN repeats and realleges the allegations stated in paragraphs 1 through 36 of the Amended Verified Complaint as if set forth more fully herein.

38. Pursuant to Clauses 8 and 59 of the Charter Party, all bills of lading are to be issued in conformity with the Mate's Receipts, are to be consistent with the terms of the Charter Party, and any consequences or liabilities of failure to adhere to the remarks in the Mate's Receipts or consequences or liabilities arising from any inconsistencies between the Charter Party and any bills of lading or waybills are to be borne by PHOENIX DELAWARE.

39. PHOENIX DELAWARE wrongfully and in breach of Clauses 8 and 59 of the Charter Party issued bills of lading which were not in conformity with the Mate's Receipts and issued more than one set of bills of lading, on different terms.

40. As a result of these breaches, GREAT EASTERN may incur liability with respect to the alleged cargo damage.

41. Plaintiff reserves the right to claim for losses and damages resulting from defendant PHOENIX DELAWARE's breach of Clauses 8 and 59 of the Charter Party and to request security for any such losses and damages that may arise.

42. Pursuant to Clause 17 of the Charter Party, disputes between plaintiff GREAT EASTERN and defendant PHOENIX DELAWARE are subject to English law and London arbitration.

43. Therefore, this action is in aid of arbitration in accordance with 9 USC § 8.

44. Under English law, plaintiff would expect a London arbitration tribunal to award interest on the principal amounts awarded at a rate of LIBOR plus between 1 and 3%. Plaintiff has calculated interest in the amount set forth in paragraph ¶ 46 (c) of the Amended Verified Complaint herein for three years at LIBOR plus 2/5%, compounded quarterly, and rounded down to $750,000.00. (A copy of a letter from plaintiff's London solicitors, which sets forth more information as to how interest was calculated, is attached as Exhibit A.)

45. Under English law, there are two distinct sets of costs which are being claimed in ¶¶ 46 (d) and (e) below. First, the costs of defending the cargo claims that are likely to be brought against plaintiff in Turkey (see ¶ 20 above), which are recoverable under the Interclub Agreement and which would form part of the plaintiff's claim against defendant PHOENIX DELAWARE in a London arbitration. Secondly, the costs of a London arbitration against defendant PHOENIX DELAWARE in London that would be awarded by the Tribunal separately in a Final Award. The cost estimate for the costs of a London arbitration, as set forth in ¶ 46 (d) below, was calculated, taking into account plaintiff's London solicitors' legal fees, experts' fees, barristers' fees in relation to the

arbitration hearing, costs associated with the arbitration hearing itself, and travel costs and expenses for witnesses attending the hearing. The cost estimate for the costs of defending the cargo claims in Turkey, as set forth in ¶ 46 (e) below, was based upon advice from plaintiff's Turkish lawyers. (See Exhibit A attached, which sets forth more information in relation to these costs estimates.)

46. Plaintiff GREAT EASTERN hereby demands:

    (a) Payment of (a) $2,410,851.32 as security for the cargo claims asserted in Turkey. Plaintiff reserves the right to amend the demand herein if and when additional security is provided in regard to the cargo discharged at Diliskelesi, Turkey and if and when security is provided in regard to the cargo discharged at Novorossiysk, Russia;

    (b) Payment of $178,582.05 for charter hire due and owing to plaintiff GREAT EASTERN and wrongfully deducted by defendant PHOENIX DELAWARE;

    (c) Payment of $750,000.00 to cover interest on the amounts in sub-paragraph (a) and (b). Plaintiff reserves the right to amend the demand herein if and when the amounts in sub-paragraphs (a) and (b) are amended and if and when the interest on those claims increases over time;

    (d) Payment of $500,000 to cover the legal fees and costs in connection with the London arbitration (recoverable under English law). Plaintiff reserves the right to amend the demand herein if

and when the legal fees and costs increase over time; and

(e) Payment of $250,000.00 to cover the anticipated legal fees and costs in connection with the defense of the cargo claims pending or expected to be pending in Turkey, including the costs of the surveyors retained by plaintiff (recoverable in the London arbitration under English law). Plaintiff reserves the right to amend the demand herein to include additional legal fees and costs in connection with the defense of the cargo claims pending or expected to be pending in Turkey and/or Russia, including the costs of the surveyors retained by plaintiff (recoverable in the London arbitration under English law).

47. Judges in this District have routinely issued Ex Parte Orders of Maritime Attachment and Garnishment that provide for interest and legal costs (*i.e.*, attorneys' fees and disbursements) in circumstances where the underlying claim is subject to English law and London or other foreign arbitration. For example, see <u>Consub Delaware LLC v. Schain Engenharia Limitada</u>, 2007 U.S. Dist. LEXIS 10105 *2 (S.D.N.Y. 2007) (J. Scheindlin) (issuing attachment order for the full amount set forth in the verified complaint, including interest and attorney's fees and expenses, "which are alleged to be routinely recoverable under English law"); <u>AET, Inc. Ltd. v. Procuradoria de Servicos Martimos Cardoso & Fonesca</u>, 2006 U.S. Dist. LEXIS 89628 *1 (S.D.N.Y. 2006) (J. Chin) (issuing attachment order for the principal amount, plus interest, judicial costs, and attorneys' fees recoverable in Brazil); <u>T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.</u>, 415 F. Supp.2d 310, 313 (S.D.N.Y. 2006) (J. Scheindlin) (issuing attachment order

for the principal amount, interest, costs (arbitrators, fees, *etc.*, and attorneys' fees); Taxfield Shipping Ltd. v. Asiana Marine Inc., 2006 U.S. Dist. LEXIS 77465 (S.D.N.Y. 2006) (J. Cote) (issuing attachment order for the principal amount and interest, legal costs, and arbitration costs); but see Noble Shipping Inc. v. Euro-Maritime Chartering, Ltd., 2003 U.S. Dist. LEXIS 23008 *2 (S.D.N.Y. 2003) (J. Cote) (issuing writ that only authorized attachment of the principal amount).

48. Since English law provides for recovering interest and legal costs, as per ¶¶ 44 and 45 above, and Judges in this Court have routinely issued attachment orders that have included the principal amount of the claim as well as interest and legal costs, plaintiff respectfully requests that the Court issue an amended Ex Parte Order of Maritime Attachment and Garnishment that includes the foregoing interest and legal costs as per ¶¶ 46 (d) and (e) above.

WHEREFORE, plaintiff GREAT EASTERN prays that:

a. process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against defendants, citing them to appear and answer under oath all and singular the matters alleged;

b. since defendants cannot be found within this District, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and the United States Arbitration Act, 9 USC §§ 1, 8 and 9, attaching all of defendants goods, chattels, letters of credit, bills of lading, effects, debts and monies, property tangible or intangible, or any other funds held by any garnishee, for the sums which are due and owing to plaintiff GREAT EASTERN, in the amount of

$4,089,433.37 to secure plaintiff GREAT EASTERN's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged;

    c.    this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary;

    d.    judgment be entered by this Court in favor of plaintiff and against defendants enforcing and recognizing any London arbitration award(s) or judgment(s) that may be rendered on the claims set forth herein; and

    e.    plaintiff have such other, further, and different relief as this Court may deem just and proper.

Dated: October 2, 2007

                              LYONS & FLOOD, LLP
                              Attorneys for Plaintiff
                              GREAT EASTERN SHIPPING CO. LTD.

By: _____
                Kirk M. Lyons (KL-1568)
                65 West 36th Street, 7th Floor
                New York, New York 10018
                (212) 594-2400

## VERIFICATION

Kirk M. Lyons, the undersigned, an attorney admitted to practice in this Court, state that I am the attorney of record for plaintiff GREAT EASTERN SHIPPING CO. LTD. in the within action; I have read the foregoing Amended Verified Complaint and know the contents thereof; the same is true to my knowledge based on documents in my file, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The reason this Verification is made by me and not an officer of plaintiff GREAT EASTERN SHIPPING CO. LTD. is because there are no officers now present in this District.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on:   October 2, 2007

_____
Kirk M. Lyons

U:\kmhldocs\2563036\Pleadings\Amended Verified Complaint - CA and CD mark-up 02.10.07 (kml rev).DOC

EXHIBIT A
Blumberg No. 5119



INTERNATIONAL
LAW FIRM

For the Attention of:
Honorable Denise L. Cote
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1040
New York, New York 10007-1312
c/o Kirk M. Lyons
Lyons & Flood LLP
65 West 36th Street
7th Floor
New York,
NY 10018

International House
1 St Katharine's Way
London E1W 1AY
DX 1070 London City

Tel +44 20 7481 0010
Fax +44 20 7481 4968
www.incelaw.com

Your Ref
Our Ref      CPD/CMA/8610/8724

28 September 2007

Dear Judge Cote,

**Great Eastern Shipping Co. Ltd - v - Phoenix Shipping Corporation;**
**ECF Case: 07 CIV 8373 (DLC)**

We are English solicitors instructed by the Plaintiff in the above referenced case.

For the Court's assistance, we set out herein a brief explanation of the justification for the recovery of interest and costs under English law, which governs the claims arising between the Plaintiff and the Defendant under the Charter Party, and of the way in which we calculated the interest and costs claimed in the above referenced case.

**1. Recovery of Interest and Costs in respect of cargo claims**

As explained in the Verified Complaint filed with the Court, the Charter Party between the Plaintiff and the Defendant incorporates the NYPE Interclub Agreement 1996 (the "ICA"). As part of allocating liability for cargo claims as between a vessel owner and a charterer, the ICA also allocates liability for interest and the costs of defending cargo claims in accordance with the same criteria.

1.1     Interest

The Verified Complaint states that the Plaintiff and the Defendant have agreed to refer any disputes arising under the Charter Party to London arbitration. We explain in paragraph 2.1 below, that we

DUBAI I HAMBURG I HONG KONG I LE HAVRE I LONDON I PARIS I PIRAEUS I SHANGHAI I SINGAPORE

Ince & Co is a partnership of solicitors and registered foreign lawyers and is regulated by the Law Society. A full list of Partners is available for inspection at the above address.
1.07.9268.00 6640970



INTERNATIONAL LAW FIRM

28 September 2007

would expect a London arbitration tribunal to award interest on the principal amount awarded at a rate of LIBOR plus between 1 and 3%.

1.2    Costs

The costs of the arbitration are recoverable separately from the ICA and the amount of costs awarded in this regard is at the discretion of the arbitration Tribunal under English law. It is usual for the unsuccessful party to be required to pay the successful party's reasonable costs in the dispute.

2. Calculation of Interest and Costs

2.1    Interest

We calculated interest for three years at LIBOR plus 2.5%, compounded quarterly, and rounded it down to $750,000.

Interest was calculated on each of the following principal amounts:

(i)    $2,410,851.32, being the total security provided by the Plaintiff to date in respect of the cargo claims notified; and

(ii)   $178,582.05, being the amount of charter hire wrongfully deducted by the Defendant.

It was calculated from the date when the security was provided, or from the date when the hire was due and payable, respectively, until mid-September 2010.

We calculated interest for three years because that is how long we estimate it could take to obtain a London arbitration award from the Defendant in respect of the cargo claims faced by the Plaintiff.

In our experience, London arbitration tribunals tend to award interest on awards at a rate of LIBOR plus between 1-3% depending on, inter alia, the prevailing rate of interest. Given the current high rate of interest in the UK we considered an uplift of 2.5% to be appropriate.

2.2    Costs

As explained above there are two distinct sets of costs which are claimed within the Verified Complaint. Firstly, the costs of defending the cargo claims that are likely to be brought against the Plaintiff in Turkey which are recoverable under the Inter Club Agreement and which would form part of the Plaintiff's claim against the Defendant in a London arbitration and secondly the costs of an arbitration against the Defendant in London which would be awarded by the Tribunal separately in a Final Award. Our costs estimate for the costs of defending the cargo claims is based upon advice from the Plaintiff's Turkish lawyers. The costs estimate for the costs of a London arbitration was calculated with assistance from our costs department, and takes into account our legal fees, experts' fees,



28 September 2007

barristers' fees in relation to the arbitration hearing, costs associated with the arbitration hearing itself, and travel costs and expenses for witnesses attending the hearing.

We hope that the above helps to clarify the position in respect of costs and interests and would be happy to provide such further assistance as the Court may require.

Yours sincerely

*Ince & Co.*

**Ince & Co**