# EXHIBIT C

APPEAL, ECF

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:06-cv-03705-LAK

| | |
|---|---|
| Bottiglieri Di Navigazione SPA v. Tradeline LLC | Date Filed: 05/15/2006 |
| Assigned to: Judge Lewis A. Kaplan | Jury Demand: None |
| Cause: 28:1333 Admiralty | Nature of Suit: 120 Contract: Marine |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Bottiglieri Di Navigazione SPA**　　　　represented by　**Thomas Hunt Belknap, Jr**
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
Fax: 212-885-5001
Email: tbelknap@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tradeline LLC**

**Garnishee**

**Societe Generale New York Branch**　　　represented by　**Richard Joseph Reisert**
Clark, Atcheson & Reisert
7800 River Road
North Bergen, NJ 07047
201-537-1200
Fax: 201-537-1201
Email: reisert@navlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Garnishee**

**Standard Chartered Bank**

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

　　　　　　　　　　　　　　　　　　　　　　　　　　　11/2/2007 9:56 AM

| | | |
|---|---|---|
| 05/15/2006 | 1 | COMPLAINT against Tradeline LLC. (Filing Fee $ 350.00, Receipt Number 579372)Document filed by Bottiglieri Di Navigazione SPA.(mo, ) Additional attachment(s) added on 5/16/2006 (mbe, ). (Entered: 05/16/2006) |
| 05/15/2006 | | SUMMONS ISSUED as to Tradeline LLC. (mo, ) (Entered: 05/16/2006) |
| 05/15/2006 | | Magistrate Judge Michael H. Dolinger is so designated. (mo, ) (Entered: 05/16/2006) |
| 05/15/2006 | | Case Designated ECF. (mo, ) (Entered: 05/16/2006) |
| 05/15/2006 | 2 | RULE 7.1 DISCLOSURE STATEMENT. Document filed by Bottiglieri Di Navigazione SPA.(mo, ) Additional attachment(s) added on 5/16/2006 (mbe, ). (Entered: 05/16/2006) |
| 05/15/2006 | 3 | ORDER directing the clerk to issue Maritime Attachment and Garnishment shall issue against all tangible or intangible property belonging to, claimed by or being held for the Defendant by any garnishees named in Schedule A (The Bank of New York, Bank of America, JP Morgan Chase, ABN Amro Bank, American Express Bank, Barclay?s Bank, BNP Paribas, Citibank, Commerce Bank, HSBC (USA) Bank, Standard Chartered Bank, Wachovia Bank, UBS, AG, Credit Suisse, Deutsche Bank, Marhreq Bank) within this District, including but not limited to electronic fund transfers originated by, payable to, or otherwise for the benefit of Defendant, whether to or from the garnishee banks or any other electronic fund transfers, in an amount up to US$2,881,741.73. The supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court. (Signed by Judge Lewis A. Kaplan on 5/15/06) (sgu, ) (Entered: 05/17/2006) |
| 05/15/2006 | 4 | ORDER APPOINTING PROCESS SERVER Michael Watson or any other person at least 18 years of age and not a party to this action, appointed by Healy & Baillie, LLP, be and hereby is, appointed to serve the Order Directing Clerk to Issued Process of Maritime Attachment and Garnishment, the Process of Maritime Attachment and any Supplemental Process, and a copy of the Verified Complaint on garnishees identified in the garnishment order issued by the Court and such additional garnishees as so permitted therein. (Signed by Judge Lewis A. Kaplan on 5/15/06) (sgu, ) (Entered: 05/17/2006) |
| 05/15/2006 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Tradeline LLC on 5/15/06 in the amount of $2,881,741.73. (sgu, ) (Entered: 05/17/2006) |
| 05/31/2006 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Tradeline LLC on 5/31/06 in the amount of $2,881,741.73. (dn, ) (Entered: 06/01/2006) |
| 06/21/2006 | 5 | NOTICE OF APPEARANCE by Richard Joseph Reisert on behalf of Societe Generale New York Branch (Reisert, Richard) (Entered: 06/21/2006) |

| 06/21/2006 | 6 | ANSWER to Writ of Garnishment *Report of Garnishee Societe Generale New York Branch to Plaintiff's Maritime Attachment.* Document filed by Societe Generale New York Branch. (Reisert, Richard) (Entered: 06/21/2006) |
| 06/22/2006 | 7 | ORDER RE SCHEDULING AND INITIAL PRETRIAL CONFERENCE:... If such a consent order is not filed within the time provided,... Initial Conference set for 7/7/2006 at 11:00 AM before Judge Lewis A. Kaplan in Courtroom 12D, 500 Pearl Street, New York, New York.. (Signed by Judge Lewis A. Kaplan on 6/22/2006) (lb, ) (Entered: 06/23/2006) |
| 07/12/2006 | 8 | DECLARATION of Captain Somnath *in support of application to vacate attachment and dismiss action.* Document filed by Tradeline LLC. (Kahn, Lawrence) (Entered: 07/12/2006) |
| 07/12/2006 | 9 | DECLARATION of John Habergham *in support of application to vacate attachment and dismiss action.* Document filed by Tradeline LLC. (Kahn, Lawrence) (Entered: 07/12/2006) |
| 07/12/2006 | 10 | MEMORANDUM OF LAW *in support of defendant's application to vacate attachment and dismiss action.* Document filed by Tradeline LLC. (Kahn, Lawrence) (Entered: 07/12/2006) |
| 07/13/2006 | 11 | ORDER TO SHOW CAUSE by Tradeline LLC Counsel shall not appear on the actual date if the taking of evidence proves necessary, the court will advise counsel. The Court does not agree in all respects with the assertions made in the affirmation of Mr. Unger but does not regard, any inaccuracies as material. The order signed earlier today is vacated. So Ordered. (Signed by Judge Lewis A. Kaplan on 7/12/06) (jco, ) (Entered: 07/13/2006) |
| 07/13/2006 | 12 | RULE 7.1 DISCLOSURE STATEMENT. Document filed by Tradeline LLC.(Kahn, Lawrence) (Entered: 07/13/2006) |
| 07/13/2006 | 13 | AFFIRMATION of Michael Unger *to Amend Motion Schedule.* Document filed by Tradeline LLC. (Kahn, Lawrence) (Entered: 07/13/2006) |
| 07/27/2006 | 14 | CLERK CERTIFICATE OF MAILING of Summons, Verified Complaint, Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment and Order Appointing Process Server mailed to Tradeline LLC Office No. 839, 8th Floor, Office Towers, Al Ghurair City, Dubai, United Arab Emirates on 7/27/2006 by Federal Express # 8480 6125 7345. (aba, ) (Entered: 07/28/2006) |
| 07/31/2006 | 15 | MEMORANDUM OF LAW in Opposition re: 11 Order to Show Cause,. Document filed by Bottiglieri Di Navigazione SPA. (Belknap, Thomas) (Entered: 07/31/2006) |
| 07/31/2006 | 16 | AFFIDAVIT of Thomas H. Belknap, Jr. in Opposition re: 11 Order to Show Cause,. Document filed by Bottiglieri Di Navigazione SPA. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K)(Belknap, Thomas) (Entered: 07/31/2006) |

| | | |
|---|---|---|
| 07/31/2006 | 17 | DECLARATION of Benjamin Olbourne in Opposition re:11 Order to Show Cause,. Document filed by Bottiglieri Di Navigazione SPA. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C, Part 1# 4 Exhibit C, Part 2# 5 Exhibit C, Part 3# 6 Exhibit C, Part 4# 7 Exhibit D, Part 1# 8 Exhibit D, Part 2# 9 Exhibit D, Part 3# 10 Exhibit D, Part 4# 11 Exhibit D, Part 5# 12 Exhibit D, Part 6# 13 Exhibit D, Part 7# 14 Exhibit E, Part 1# 15 Exhibit E, Part 2# 16 Exhibit F, Part 1# 17 Exhibit F, Part 2# 18 Exhibit F, Part 3# 19 Exhibit G# 20 Exhibit H# 21 Exhibit I)(Belknap, Thomas) (Entered: 07/31/2006) |
| 07/31/2006 | 18 | DECLARATION of Kathryn Whelan in Opposition re:11 Order to Show Cause,. Document filed by Bottiglieri Di Navigazione SPA. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K)(Belknap, Thomas) (Entered: 07/31/2006) |
| 08/15/2006 | 19 | REPLY MEMORANDUM OF LAW in Support re:11 Order to Show Cause,. Document filed by Tradeline LLC. (Molina, Manuel) (Entered: 08/15/2006) |
| 08/15/2006 | 20 | AFFIDAVIT of John Habergham in Support re:11 Order to Show Cause,. Document filed by Tradeline LLC. (Molina, Manuel) (Entered: 08/15/2006) |
| 08/15/2006 | | CLERK CERTIFICATE OF MAILING RECEIVED for Summons & Verified Complaint mailed to Tradeline LLC on 7/27/2006 by FedEx # 8480 6125 7345, RECEIVED ON: 7/31/2006. (aba, ) (Entered: 08/15/2006) |
| 09/28/2006 | 21 | NOTICE of Change of Firm and Address. Document filed by Bottiglieri Di Navigazione SPA. (Belknap, Thomas) (Entered: 09/28/2006) |
| 09/29/2006 | 22 | ANSWER to Writ of Garnishment of Standard Chartered Bank, Garnishee. Document filed by Standard Chartered Bank. (Vogel, Joseph) (Entered: 09/29/2006) |
| 02/06/2007 | 23 | MEMORANDUM AND OPINION # 94251 that deft's motion to vacate the order of attachment is granted. (Signed by Judge Lewis A. Kaplan on 2/6/07) (cd) Modified on 2/9/2007 (Wilson, Richard). (Entered: 02/07/2007) |
| 02/20/2007 | 24 | NOTICE of Entry of Appearance to Receive ECF Notices. Document filed by Tradeline LLC. (Kahn, Lawrence) (Entered: 02/20/2007) |
| 02/20/2007 | 25 | NOTICE of Entry of Appearance to Receive ECF Notices. Document filed by Tradeline LLC. (Unger, Michael) (Entered: 02/20/2007) |
| 02/21/2007 | 26 | ORDER TO SHOW CAUSE by Bottiglieri Di Navigazione SPA for an order purs. to rule 62(d) of the FRCP staying enforcement, pending appeal, of this court's memorandum opinion and order dated 2/6/07 which granted dft's motion to vacate the process of maritime attachment and garnishment issued herein and release funds that were restrained purs. thereto. Show Cause Hearing set for 2/22/2007 02:30 PM before Judge Lewis A. Kaplan. (Signed by Judge Lewis A. Kaplan on 2/21/07) (dle) (Entered: 02/22/2007) |

| | | |
|---|---|---|
| 02/22/2007 | 27 | AFFIDAVIT OF SERVICE of OSC to Stay Enforcement Order and Supporting Declaration of Jack A. Greenbaum and Memorandum of Law served on Michael Unger, Esq., Freehill Hogan & Mahar, Attorneys for Plaintiff on 2/21/07. Service was made by E-MAIL. Document filed by Tradeline LLC. (Greenbaum, Jack) (Entered: 02/22/2007) |
| 02/22/2007 | 28 | DECLARATION of Jack A. Greenbaum in Support re: 26 Order to Show Cause,. Document filed by Tradeline LLC. (Greenbaum, Jack) (Entered: 02/22/2007) |
| 02/22/2007 | 29 | MEMORANDUM OF LAW in Support re: 26 Order to Show Cause,. Document filed by Tradeline LLC. (Greenbaum, Jack) (Entered: 02/22/2007) |
| 02/22/2007 | 31 | NOTICE OF APPEAL from 23 Memorandum & Opinion. Document filed by Bottiglieri Di Navigazione SPA. Filing fee $ 455.00, receipt number E 606979. (nd) (Entered: 02/26/2007) |
| 02/22/2007 | | Minute Entry for proceedings held before Judge Lewis A. Kaplan : Oral Argument held on 2/22/2007 re: 26 Order to Show Cause, filed by Bottiglieri Di Navigazione SPA. (jar) (Entered: 03/05/2007) |
| 02/23/2007 | 30 | ORDER re: that the plaintiffs motion for a stay of my order vacating the order of maritime attachment is denied. (Signed by Judge Lewis A. Kaplan on 2/22/07) (pl) (Entered: 02/26/2007) |
| 02/26/2007 | | Transmission of Notice of Appeal to the District Judge re: 31 Notice of Appeal. (nd) (Entered: 02/26/2007) |
| 02/26/2007 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 31 Notice of Appeal. (nd) (Entered: 02/26/2007) |
| 02/26/2007 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 7 Order for Initial Pretrial Conference, 11 Order to Show Cause, filed by Tradeline LLC, 3 Order Issuing Maritime Attachment and Garnishment,,, 26 Order to Show Cause, filed by Bottiglieri Di Navigazione SPA, 17 Declaration in Opposition,, filed by Bottiglieri Di Navigazione SPA, 8 Declaration filed by Tradeline LLC, 13 Affirmation filed by Tradeline LLC, 25 Notice (Other) filed by Tradeline LLC, 18 Declaration in Opposition, filed by Bottiglieri Di Navigazione SPA, 21 Notice (Other) filed by Bottiglieri Di Navigazione SPA, 31 Notice of Appeal filed by Bottiglieri Di Navigazione SPA, 5 Notice of Appearance filed by Societe Generale New York Branch, 22 Answer to Writ of Garnishment filed by Standard Chartered Bank, 1 Complaint filed by Bottiglieri Di Navigazione SPA, 15 Memorandum of Law in Opposition filed by Bottiglieri Di Navigazione SPA, 12 Rule 7.1 Corporate Disclosure Statement filed by Tradeline LLC, 2 Rule 7.1 Corporate Disclosure Statement filed by Bottiglieri Di Navigazione SPA, 19 Reply Memorandum of Law in Support filed by Tradeline LLC, 10 Memorandum of Law filed by Tradeline LLC, 14 Clerk Certificate of Mailing, 23 Memorandum & Opinion, 16 Affidavit in Opposition, filed by Bottiglieri Di Navigazione SPA, 29 Memorandum of Law in Support filed by Tradeline LLC, 6 Answer to Writ of Garnishment filed by Societe Generale New York |

| | | |
|---|---|---|
| | | Branch, 27 Affidavit of Service Other, filed by Tradeline LLC,4 Order Appointing Process Server,, 24 Notice (Other) filed by Tradeline LLC,30 Order, 9 Declaration filed by Tradeline LLC,20 Affidavit in Support filed by Tradeline LLC, 28 Declaration in Support filed by Tradeline LLC were transmitted to the U.S. Court of Appeals. (nd) (Entered: 02/26/2007) |
| 03/08/2007 | 32 | TRANSCRIPT of proceedings held on 2/22/07 before Judge Lewis A. Kaplan. (jbe) (Entered: 03/08/2007) |
| 05/04/2007 | 33 | STIPULATION that purs to FRCP 10(e)(2)(A) the document attached hereto a Exhibit A is a true and accurate copy of the letter dated 8/18/06 in connection with its opposition to deft's motion to vacate the order of attachment issued in this matter. (Signed by Judge Lewis A. Kaplan on 5/3/07) (cd) (Entered: 05/07/2007) |
| 05/07/2007 | | First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files for 33 Stipulation and Order, USCA Case Number 07-0850, were transmitted to the U.S. Court of Appeals. (nd) (Entered: 05/07/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/02/2007 09:54:55 | | |
| **PACER Login:** | sp0122 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:06-cv-03705-LAK |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

250-06/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BOTTIGLIERI DI NAVIGAZIONE SPA,

                                          Plaintiff,

      -against-

TRADELINE LLC,

                                      Defendant.
-------------------------------------------------------x

**06 CIV 3705 (LAK)**

### DEFENDANT TRADELINE LLC'S
### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### <u>TO VACATE ATTACHMENT</u>

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant Tradeline LLC
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax

Of Counsel:

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/264770.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ...................................................................................................................... 1

ARGUMENT

Point I

IT IS BDN'S BURDEN TO SHOW WHY THE
ATTACHMENT SHOULD BE MAINTAINED;
OTHERWISE, THE ATTACHMENT MUST
BE VACATED ................................................................................................... 3

Point II

BDN'S RULE B ATTACHMENT IS
PREMATURE AND SHOULD BE VACATED
BECAUSE THE REMEDY IS NOT
AVAILABLE FOR THE PURPOSE OF
SECURING A CONTINGENT CLAIM ............................................................ 5

Point III

THE ATTACHMENT SHOULD BE VACATED
BECAUSE BDN FAILED TO PROVIDE THE
REQUIRED PROMPT NOTICE OF THE
RESTRAINT........................................................................................................ 9

Point IV

THE ATTACHMENT SHOULD BE VACATED
BECAUSE TRADELINE IS A SUBSTANTIAL,
FINANCIALLY SECURE COMPANY, AND
THE ATTACHMENT AGAINST IT IS
THEREFORE "UNFAIR"................................................................................... 12

CONCLUSION......................................................................................................... 16

i

## TABLE OF AUTHORITIES

CASES

Allied Maritime, Inc. v. Rice Corp., 2004 U.S. Dist. LEXIS
    20353 (S.D.N.Y. Oct. 12, 2004) ..................................................................12

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 384
    F.Supp.2d 726 (S.D.N.Y. 2005) ...................................................4, 5, 12, 14

Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d
    113 (E.D.N.Y. 1998).......................................................................................4

Blake Maritime, Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS
    26310 (S.D.N.Y. Oct. 31, 2005) ............................................................10, 14

Chestnut Shipping Co. v. T-3 Freight, Ltd., 1995 U.S. Dist.
    LEXIS 2053 (S.D.N.Y. Feb. 22, 1995).......................................................10

Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A.
    de C.V., 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9,
    2005) ..............................................................................................................6

F.J. Schindler Equipment Co. v. Raymond Co., 418 A.2d 533
    (Pa. Super. Ct. 1980).....................................................................................5

Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901 (2d
    Cir. 1965) ......................................................................................................6

Integrated Container Serv., Inc. v. Starlines Container
    Shipping, Ltd., 476 F. Supp. 119 (S.D.N.Y. 1979)....................................12

Linea Naviera de Cabotaje, C.A. v. Mar Caribe de
    Navigacion, C.A., 169 F.Supp.2d 1341 (M.D.FL. 2001) .............................4

The M.M. CHASE, 37 F. 708 (S.D.N.Y. 1889) .........................................9, 10

Polar Shipping v. Oriental Shipping Co., 658 F.2d 627 (9th
    Cir. 1982) ................................................................................................8, 10

Rolls Royce Industrial Power (India) v. M/V FRATZIS M,
    1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) ..............................................11

Royal Swan Navigation Co. v. Global Container Lines, 868
    F. Supp. 599 (S.D.N.Y. 1994) ...................................................................13

NYDOCS1/264916.1

Salazar v. The Atlantic Sun, 881 F.2d 73 (3d Cir. 1989) ...................................................4

Seaplus Line Co. v. Bulkhandling Handymax, 409
F.Supp.2d 316 (S.D.N.Y. 2005) .............................................................3, 4, 10, 11, 14

Seatrans Shipping Corp. v. Interamericas Marine Transp.,
Ltd., 1997 U.S. Dist. LEXIS 5665 (S.D.N.Y. Apr. 29,
1997) ....................................................................................................................6

Signet Shipping Co. v. Southern Hardwoods, Inc., 108
F.Supp.2d 649 (E.D.LA. 2000).................................................................................13

Staronset Shipping, Ltd. v. North Star Navigation, Inc.,
659 F. Supp. 189 (S.D.N.Y. 1987)..........................................................................6, 7

T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,
415 F.Supp.2d 310 (S.D.N.Y. 2006)........................................................................3, 4

The Toledo, 122 F.2d 255 (2d Cir.), cert. denied, 314
U.S. 689 (1941)......................................................................................................5

Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415
F.Supp.2d 318 (S.D.N.Y. 2006) ...............................................................................4

United States v. All Funds Distributed to Weiss, 345
F.3d 49 (2d Cir. 2003)..............................................................................................6

Universal Africa Line v. ED&F Man Cocoa, Inc., 1996
U.S. Dist. LEXIS 4767 (E.D.PA. Apr. 15, 1996) .......................................................14

Williams v. GH Development & Constr. Co., Inc., 672
N.Y.S.2d 937 (App.Div. 1998)..................................................................................5

Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d
Cir. 2002) ...............................................................................................................6

## TREATISES

Black's Law Dictionary (6th ed.)..............................................................................9

NYDOCS1/264916.1

## PRELIMINARY STATEMENT

Defendant Tradeline LLC ("Tradeline") respectfully submits this Memorandum of Law in support of its motion to vacate the maritime attachment against it in favor of Plaintiff Bottigliere Di Navigazione SpA ("BDN"). The background facts are not in dispute, and are set forth below.

## FACTS

In January 2001, Tradeline, as charterer, entered into a charter party contract with BDN, as disponent owner, for the charter of the M/V KAVO DELFINI to carry a cargo of corn and soya bean meal from Argentina to Iran. BDN was not the owner of the M/V KAVO DELFINI, but instead chartered the ship from its actual owner, Fortune Marine SA Liberia ("Head Owners"). Habergham Declaration ¶3.

Tradeline is a large, well-established, and financially sound company that is ready, willing and able to meet any debts it owes, including but not limited to any monies, if any, owed in respect to the matter to be arbitrated (if at all) between BDN and Tradeline. When BDN chartered the M/V KAVO DELFINI to Tradeline, BDN made no request for a performance guarantee, payment guarantee, or any other security and instead relied solely on Tradeline's creditworthiness. Similarly, the charter party provides that BDN would agree to accept an unsecured letter of indemnity from Tradeline – on Tradeline's personal unsecured liability – if the cargo had to be delivered before the bills of lading arrived at the discharge port. Somnath Declaration ¶4-12, 18 and 19.

When the cargo arrived at Iran in April 2001, the corn was allegedly in damaged condition, and the receivers reportedly brought an action directly against Head Owners to

recover for the alleged cargo damages. Head Owners reportedly settled the cargo claim directly with the receivers of the corn for approximately $2,080,000. Tradeline was given no timely notice of the cargo claim, nor any opportunity to inspect either the allegedly damaged corn or the vessel, or to make any other investigation at the time. Somnath Declaration ¶16; Habergham Declaration ¶4, 10.

To the extent that the damage to the corn was caused by the unseaworthiness of the vessel, payment for such damage would be the responsibility of the Head Owners, who would have no right of indemnity against BDN, who in turn would of course have no right of indemnity against Tradeline. Habergham Declaration ¶5.

In or about October 2001, Head Owners demanded arbitration from BDN for various claims, including indemnity for the $2,080,000 paid to the cargo receivers, demurrage at the load and discharge ports, detention damages, breach of contract damages, the cost of increased insurance premiums, and interest on these sums. BDN, in turn, in October 2001, demanded arbitration of Tradeline seeking indemnity on the arbitral claim brought against BDN by Head Owners. Habergham Declaration ¶6.

None of Head Owners' claims are proven. The cause and amount of the damage to the corn (if any) and whether the Head Owners acted reasonably in settling the claim by the cargo receivers is unproven. Valid defenses to the demurrage and detention claims may be pursued if Head Owners' claims are pressed. The breach of contract and increased insurance premium claims do not even appear to be well-founded and may be defended. Habergham Declaration ¶7.

The parties to both the separate arbitrations have all appointed their arbitrators, but other than this preliminary step, the two arbitrations, both now nearly five years old,

have not progressed at all.  Head Owners have not made any formal submissions whatsoever to advance their claim against BDN, and BDN has not made any formal submissions whatsoever to advance its claim against Tradeline.  BDN was not required to post any security in favor of Head Owners, and has not posted any security with respect to Head Owners' claim.  BDN also has not made any payment to Head Owners in resolution of the arbitration between those parties.  Habergham Declaration ¶8-11, 13; Somnath Declaration ¶13-15.

Despite the fact that both of the arbitrations concerning the April 2001 allegedly damaged corn aboard the M/V KAVO DELFINI have stalled and that there has been no indication that Head Owners will ever be pursuing their claims against BDN (for which BDN protectively sought indemnity from Tradeline), BDN has applied to this Court for security from Tradeline via an attachment of Tradeline's assets pursuant to Rule B, and has restrained approximately $245,000 of Tradeline's funds.

For the reasons set forth below, the attachment should be vacated.

## ARGUMENT

### Point I

### IT IS BDN'S BURDEN TO SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED; OTHERWISE, THE ATTACHMENT MUST BE VACATED

An order of maritime attachment and garnishment under Rule B must be issued upon a minimal *prima facie* showing, which is usually *ex parte*.  Seaplus Line Co. v. Bulkhandling Handymax, 409 F.Supp.2d 316 (S.D.N.Y. 2005).  Once property has been restrained, "any person claiming an interest" in the attached *res* may request a "prompt" hearing in order to seek to have the attachment vacated or request other relief.  T&O

Shipping, Ltd. v. Lydia Mar Shipping Co. S.A., 415 F.Supp.2d 310, 313 (S.D.N.Y. 2006). Rule E(4)(f) provides specifically that:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall be required to show why the arrest or attachment should not be vacated* or other relief granted consistent with these rules.

(Emphasis supplied.) Pursuant to Local Admiralty Rule E.1, the prompt hearing is to be held "within three court days".

Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining the attachment rests squarely with the plaintiff. *See, e.g.,* Seaplus, 409 F.Supp.2d 316; Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 384 F.Supp.2d 726, 728 (S.D.N.Y. 2005) ("[i]t is thus clear that the party obtaining the attachment order bears the burden at the subsequent hearing of justifying it"); Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113, 125 (E.D.N.Y. 1998); Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006).

Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff...to show why the attachment should not be vacated").

The Southern District of New York has regularly held that "[a]t an attachment hearing, the plaintiff must show, by a preponderance of the evidence, that the attachment order not only meets all technical requirements but also is reasonably calculated to serve at least one of the two historical purposes of obtaining jurisdiction or securing a judgment and is not simply a tactical device designed to harass the adversary…". Aqua Stoli, 384 F.Supp.2d at 729.

Here, Plaintiff BDN will be unable to show that the attachment serves at least one of the two historical purposes, nor will BDN be able to show that all technical requirements have been met. Moreover, given Tradeline's size and liquidity, it should be clear that there is no need for the security in any event. Accordingly, the attachment should be vacated.

**Point II**

**BDN'S RULE B ATTACHMENT IS PREMATURE
AND SHOULD BE VACATED BECAUSE THE REMEDY
IS NOT AVAILABLE FOR THE PURPOSE
OF SECURING A CONTINGENT CLAIM**

The charter party between BDN and Tradeline does not provide for an express indemnity provision covering BDN's claim against Tradeline in the London arbitration between the two parties. Accordingly, BDN's indemnity claim can only be, at most, an implied contractual indemnity. It is well-established that a cause of action for implied contractual indemnity does not accrue, though, until the purported indemnitee (here, BDN) has actually incurred an obligation or liability to a third party (here, Head Owners). The Toledo, 122 F.2d 255, 257 (2d Cir.), cert. denied, 314 U.S. 689 (1941); see also Williams v. GH Development & Constr. Co., Inc., 672 N.Y.S.2d 937, 940 (App.Div. 1998); F.J. Schindler Equipment Co. v. Raymond Co., 418 A.2d 533, 534 (Pa. Super. Ct.

1980).  The filing of a cause of action for indemnity before any such liability is determined or payment is made to a third party is premature.  This is also true under English law, which governs Tradeline's charter party.  Habergham Declaration ¶12.

The Court has discretion to determine whether an attachment should be vacated because an indemnity action is premature.  Seatrans Shipping Corp. v. Interamericas Marine Transp., Ltd., 1997 U.S. Dist. LEXIS 5665, *3 (S.D.N.Y. Apr. 29, 1997); see also Eitzen Sealift A/S v. Cementos Andinos Dominicanos, S.A. de C.V., 2005 U.S. Dist. LEXIS 19876 (S.D.N.Y. Sept. 9, 2005).

It is a general principle that the seizure of funds where the claim is still premature should be disallowed except "in isolated situations under peculiar factual circumstances." United States v. All Funds Distributed to Weiss, 345 F.3d 49, 58 (2d Cir. 2003), as cited in Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 276-77 (2d Cir. 2002), and quoting Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 906-07 (2d Cir. 1965).  In Greenwich, the Second Circuit held that vacature of a maritime attachment was proper where the plaintiff had not been sued by an injured third party.  The Court in Greenwich found that the plaintiff's claim was merely a premature indemnity claim and concluded therefore that the District Court's vacature of the attachment was proper.

Except in unusual circumstances not present here, a claim for implied contractual indemnity cannot provide a valid admiralty claim for the purposes of a Rule B attachment until the claimant has sustained actual liability, either through adjudication or settlement with a third party claimant.  The only court to even slightly relax this principle was Staronset Shipping, Ltd. v. North Star Navigation, Inc., 659 F. Supp. 189 (S.D.N.Y. 1987).  In Staronset Shipping, the vessel owner was seeking indemnity from the charterer

with respect to a claim for injury by a stevedore.  The <u>Staronset Shipping</u> Court held that the claim was not premature even though the indemnity had not ripened because the vessel owner: (a) had already incurred significant out-of-pocket expense and (b) had posted security in a separate action with the stevedore.

BDN has not incurred significant out-of-pocket expense with regard to Head Owners' claim against BDN and has not posted any security of its own in favor of Head Owners.  Accordingly, the remedy of a maritime attachment is not available to BDN.

The 2001 arbitrations concerning the allegedly damaged corn have also become stale.  Head Owners have still not made any formal submissions in their arbitration against BDN, and BDN likewise has failed to make any formal submissions in its arbitration against Tradeline.  Witnesses to the events giving rise to the claim may by now be quite difficult or even impossible to locate and their memories may well have faded, and relevant documents lost.  Tradeline is prejudiced with respect to such witness testimony or documentary evidence because the failure to provide notice of the April 2001 cargo claim denied Tradeline an opportunity to conduct its own timely investigation by taking witness statements and collecting documents which could have been used as evidence. Somnath Declaration ¶13, 16; Habergham Declaration ¶9-11, 13.

This difficulty is particularly troublesome with respect to the claim involved here because a prime concern will be the source of the alleged moisture damage to the corn. Core issues will involve the factual circumstances regarding the loading of the vessel in Argentina, where the corn which made up this cargo was stored, the storage conditions at the time, and whether the corn came from one or more sources and the moisture qualities of the corn from each source will also be important.  Certainly by now the allegedly

damaged corn at issue has been lost, consumed or destroyed and is no longer available for inspection.   The load port samples are probably similarly unavailable, and the evidence of the condition of the ship and the relevant cargo hold(s) is by now much different than the condition of the ship and its hold(s) at the time of the alleged damage to the corn. The staleness of the claim prejudices Tradeline for these reasons as well.   Somnath Declaration ¶16; Habergham Declaration ¶10.

In light of the five years the Head Owner's arbitration against BDN and BDN's own arbitration against Tradeline have been dormant, the consequent difficulties in pursuing such a stale claim, and the very real possibility that the damage to the corn, if any, was caused by an unseaworthy condition on the vessel, it appears likely that Head Owners have simply abandoned the matter. Such an abandonment would leave BDN with no indemnity claim against Tradeline, rendering BDN's arbitration, and its request to this Court for security, moot.   It is telling that BDN has not provided a basis for seeking security from Tradeline only now, some five years after commencing – but not pursuing – arbitration in London.  *See* Polar Shipping v. Oriental Shipping Co., 658 F.2d 627, 633 (9th Cir. 1982) ("[w]here evidence shows that the plaintiff would not be prejudiced by the vacating of prejudgment security, the district court can unconditionally dismiss the action and vacate the writ of attachment.")   BDN's arbitral claim should be found to be premature and contingent and the attachment should accordingly be vacated on this basis.

Point III

**THE ATTACHMENT SHOULD BE VACATED
BECAUSE BDN FAILED TO PROVIDE THE REQUIRED
PROMPT NOTICE OF THE RESTRAINT**

When a maritime plaintiff restrains property of the defendant through the *ex parte*

Rule B procedure, due process concerns require that once property is restrained, the

plaintiff must give the defendant prompt notice of the restraint so the defendant can take

advantage of its right to a prompt post-attachment hearing. This rule is codified at Local

Admiralty Rule B.2, which provides:

> In an action where any property of a defendant is attached,
> the plaintiff shall give prompt notice to the defendant of the
> attachment. Such notice shall be in writing, and may be
> given by telex, telegram, cable, fax, or other verifiable
> electronic means.

Here, Plaintiff BDN's attachment concerns two separate restraints of funds. One

restraint occurred on or about <u>May 15, 2006</u> when BDN caught approximately $243,000

at garnishee The Bank of New York. The second restraint occurred on <u>May 19, 2006</u> at

the same garnishee bank with the capture of approximately $1800 there. Plaintiff,

however, did not provide any notice of either restraint until <u>May 25, 2006</u>, and then

amended the notice on <u>May 30, 2006</u>, providing needed details of the restraints only at

that time – half a month after the initial restraint occurred. Somnath Declaration ¶21-23.

The Rule does not provide a definition for "prompt", but the term is well

understood to mean "to act immediately, responding to the instant". <u>Black's Law

Dictionary</u> (6th ed.). It was also settled long ago in the case of <u>The M.M. CHASE</u>, 37 F.

708 (S.D.N.Y. 1889) that a master who had waited until the third day following an arrest

to give notice to the appropriate parties had not been timely according to the prompt

notice requirement. The M.M. CHASE Court held that "[w]here communication may be had daily or hourly, the duty of speedy notice is the more imperative, and the ship has the corresponding advantage of being able to terminate her obligations to the cargo-owner the more quickly." The Ninth Circuit in Polar Shipping looked to a similar local rule for the definition of a like term, "instanter", which was usually understood to mean within 24 hours. Here, Plaintiff's notice of the restraint was not one or two days after the restraint, which would have been prompt, but was instead 15 days after the defendant's property had been attached by it, and certainly therefore was not prompt, under any understanding of the term, as required by Local Admiralty Rule B.2.

Local Admiralty Rule B.2 does not provide for any penalty for failing to provide prompt notice of a restraint. Certainly, though, for the Rule to have any effect, there must be some penalty for failing to comply. Former Local Admiralty Rule 12, on which the current Rule E(4)(f) is based,[1] provided that a district court had the inherent authority to vacate an attachment upon a showing of "any improper practice". See Blake Maritime. Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, *8 at n.3 (S.D.N.Y. Oct. 31, 2005); see also Chestnut Shipping Co. v. T-3 Freight. Ltd., 1995 U.S. Dist. LEXIS 2053 (S.D.N.Y. Feb. 22, 1995). In Seaplus Line, Judge Koeltl also referred to former Local Admiralty Rule 12, which provided in relevant part that "where property is arrested or attached, any person claiming an interest in the property arrested or attached, may upon a showing of any improper practice…on the part of the plaintiff to be entitled to an order requiring the plaintiff to show cause why the arrest or attachment should not be vacated…."

---

[1] See Rule E Advisory Committee's Notes (1985).

Judge Haight, in <u>Rolls Royce Industrial Power (India) v. M/V FRATZIS M</u>, 1996 A.M.C. 393 (S.D.N.Y. July 24, 1995) looked to the origin of the Local Admiralty Rule B.2 prompt notice requirement and found that the wording was identical to former Local Admiralty Rule 10, which provided:

> In an action where any property of a defendant is attached, the plaintiff shall give prompt notice to the defendant of the attachment. Such notice shall be in writing and may be given by telex, telegram or cable. *<u>Failure to give such notice may be regarded as an improper practice within the meaning of Rule 12</u>*.

(Emphasis supplied.)

The penalty of vacature of the attachment for failing to give prompt notice should still be applied. Judge Koeltl explained in <u>Seaplus Line</u> that Congress, in deviating from former Local Admiralty Rule 12 to adopt Rule E(4)(f) made it *<u>easier</u>* to vacate an attachment: "[n]o showing of improper practice or a want of equity is required as under Former Local [Admiralty] Rule 12." The reason for this seemingly harsh result is clear: Rule B provides an extraordinary remedy that is far more easily obtained in an *ex parte* hearing based on a simple *prima facie* showing than its state-law equivalent. Further, Rule E(4)(f) provides a presumption that the attachment should be vacated, unless the plaintiff meets its burden of showing why the attachment should not be vacated.

Because plaintiff BDN failed to provide Tradeline with prompt notice of the restraint as required by Local Admiralty Rule B.2, it engaged in an improper practice concerning the restraint and the attachment should therefore be vacated.

Point IV

## THE ATTACHMENT SHOULD BE VACATED BECAUSE TRADELINE IS A SUBSTANTIAL, FINANCIALLY SECURE COMPANY, AND THE ATTACHMENT AGAINST IT IS THEREFORE "UNFAIR"

District Courts have the inherent power and responsibility to ask whether a plaintiff's need for security is real and whether the plaintiff's request for an attachment is merely a tactic of harassment, and to the extent that the plaintiff does not need the attachment, the court may set aside an attachment as "unfair". Aqua Stoli, 384 F.Supp.2d at 729, quoting Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 124 (S.D.N.Y. 1979).

At a Rule E(4)(f) hearing, the plaintiff has the burden not only to show that the technical requirements of Rule B are met, but that the attachment was reasonably calculated to serve at least one of the two historic purposes of Rule B:  obtaining jurisdiction over the defendant or securing an anticipated judgment against the defendant. Otherwise, the attachment may be vacated as "unfair". Allied Maritime, Inc. v. Rice Corp., 2004 U.S. Dist. LEXIS 20353, *5 (S.D.N.Y. Oct. 12, 2004).

Here, Plaintiff BDN's purpose in seeking the attachment meets neither of the historic purposes:  BDN certainly does not need the attachment in order to secure jurisdiction over Tradeline, because Tradeline has already fully responded to the arbitration demand brought by BDN, has appointed its arbitrator, and is ready, willing and able to defend the arbitration as, if and when BDN ever pursues the claim. As to securing a possible judgment, BDN cannot make any showing that any judgment is forthcoming – its claim against Tradeline in the London arbitration is in indemnity for an

action which has never been advanced against BDN since inception nearly five years ago and has grown stale.

In Royal Swan Navigation Co. v. Global Container Lines, 868 F. Supp. 599 (S.D.N.Y. 1994), Judge Baer held that notwithstanding compliance with the formalities of Rule B, the restraint did not accord with the spirit of the rule. The Royal Swan defendant provided evidence that it was a stable concern, regularly conducted business with shipping business professionals, had not resisted arbitration or otherwise indicated that it was attempting to avoid adjudication of the dispute, and there was no indication that the defendant was financially troubled. Under these circumstances, "Royal Swan [did] not need security for its claim any more than the typical plaintiff might...[and] I cannot find that it needs the security of the Rule B attachment. I therefore vacate the attachment." Id. at 606.

In Signet Shipping Co. v. Southern Hardwoods, Inc., 108 F.Supp.2d 649 (E.D.LA. 2000), the court vacated an attachment on the affidavit of an officer of the defendant corporation showing that the defendant had substantial assets and asserted that it would respond to any judgment against it and answer any suit in a court of competent jurisdiction. The Signet Court concluded that the plaintiff:

> would suffer no prejudice if the attachment were vacated. Indeed, its position would be no worse than that of any other plaintiff in a civil action. As for plaintiff's argument that it will suffer prejudice because of any judgment it may ultimately receive in Houston must be enforced against defendant in Florida, that is a problem plaintiff created for itself when it incorporated the forum selection clause requiring disputes to be litigated in the Southern District of Texas.

Id. at 650.

In <u>Universal Africa Line v. ED&F Man Cocoa, Inc.</u>, 1996 U.S. Dist. LEXIS 4767 (E.D.PA. Apr. 15, 1996), the court noted its authority to set aside an attachment where a plaintiff has abused the maritime remedy, and ordered an evidentiary hearing to give the plaintiff an opportunity to present evidence to support its allegations of insecurity, as the record contained no evidence on the point. The court rejected the attaching plaintiff's contention that if the defendant were financially secure, it would not be prejudiced by the posting of security, stating: "[t]he issue...is not prejudice to [the defendant], but whether [the plaintiff] has a legitimate need for security." <u>Id.</u> at *8. *See also* <u>Aqua Stoli</u>, 384 F.Supp.2d 726 and <u>Seaplus Line</u>, 409 F.Supp.2d 316; *Cf.* <u>Blake Maritime</u>, 2005 U.S. Dist. LEXIS 26310.

BDN's ability to collect a prospective judgment against Tradeline is remarkably secure. The fact is that Tradeline's finances, business reputation and past performance bring this case squarely within the "unfair" attachment rule.

Disputes are not uncommon in the ocean transportation business and this is why nearly all charter parties contain arbitration clauses or forum selection clauses. At the time the charter party was negotiated, BDN could have bargained for consent to security or guarantees under circumstances similar to those here – but did not do so. Indeed, BDN expressly agreed to take Tradeline's unsecured letter of indemnity for delivery of cargo if the bills of lading were not available at the discharge port, a potential exposure of millions of dollars. It is little wonder that BDN did not see any need for security upon entering into the contract with Tradeline, given Tradeline's size and financial substance. There is no greater need for security now than there was when the contract was made. In fact, given the long dormancy of the Head Owner's claim and the likelihood that the

claim has been abandoned, there is substantially less need now for security.  Somnath Declarataion ¶4-12, 15, and 18-19.

As can be seen from the Declaration of Tradeline's Captain Somnath, Tradeline is an open company that is part of the well-known and trusted Al Ghurair Group of Companies of the United Arab Emirates.  Tradeline has been in business for more than seventeen years, and has emerged over that time to be a regional powerhouse in the trading of ferrous and non-ferrous metals, bitumen and petrochemicals, agro-commodities and minerals.  Tradeline charters at least 80 – 100 vessels each year, and its excellent financial health is seen from its auditor's report.   The company has demonstrated strong financial growth, as evidenced in part by a credit line available to it in excess of two hundred twenty six million US dollars.  Tradeline is a hugely solvent company and is continuing to grow.  It is inconceivable that Tradeline would be unable to pay a hypothetical award or judgment in the amount claimed by BDN, even in the unlikely event that BDN were able to secure an award or judgment against Tradeline.  Tradeline stands fully ready, willing, and able to pay any sums awarded to Plaintiff BDN.  Somnath Declarataion ¶4-12, 15, and 18-19.

Based on Tradeline's long-standing and financial strength, its demonstrated participation in the London arbitration and its commitment to pay any award or judgment rendered against it, and the lack of any likelihood that Head Owners will pursue – let alone collect – any claim for which Plaintiff could in turn pursue Tradeline, Plaintiff has no genuine need for security in this matter, especially not at this time.  Plaintiff's action in restraining Tradeline's funds now is unfair and abusive and the attachment should therefore be vacated.

## CONCLUSION

For all the foregoing reasons, the attachment should be vacated and Tradeline should be awarded such other, further and different relief, including but not limited to attorneys fees, interest and costs, as may be just and proper in the premises.

Dated: New York, New York
      July 11, 2006

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Defendant Tradeline LLC

By:
                              Michael E. Unger (MU 0045)
                              Lawrence J. Kahn (LK 5215)
                              80 Pine Street
                              New York, NY  10005
                              (212) 425-1900
                              (212) 425-1901 fax