```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
GREAT EASTERN SHIPPING CO. LTD.,         :
                    Plaintiff,           :
                                         :      07 Civ. 8373 (DLC)
            -v-                          :
                                         :        MEMORANDUM
PHOENIX SHIPPING CORPORATION,            :      OPINION & ORDER
and PHOENIX SHIPPING PTY LTD.,           :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Kirk M. Lyons
Lyons & Flood, LLP
65 West 36th Street, 7th Floor
New York, New York 10018

For Defendants:
Michael E. Unger
Freehil Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005

DENISE COTE, District Judge:

   On October 17, 2007, the Court issued an Order to Show

Cause why the following order (the "Order") should not issue:

   It is hereby ORDERED that Great Eastern Shipping Co.
   Ltd. shall, in cases where the parties are governed by
   the Inter-Club New York Produce Exchange Agreement of
   1996 and the law of England, in any application for ex
   parte relief based on a contingent indemnity claim,
   bring to the court's attention the split of
   authorities in the Southern District of New York
   concerning the viability of plaintiff's application
   for maritime attachment.

Plaintiff Great Eastern was required to reply to the Order to Show Cause by November 2. By letter dated November 2, counsel for Great Eastern, Kirk M. Lyons of Lyons & Flood, LLP, replied to the Order to Show Cause. For the following reasons, the Order shall issue.

BACKGROUND

On September 26, Great Eastern applied for an Ex Parte Order for Process of Maritime Attachment and Garnishment in the amount of $4,089,433.37, representing the sum total of the principal claims alleged in the complaint as well as interest and costs. Because no legal or factual support for the interest or costs sought was provided with the application, an Ex Parte Order for Process of Maritime Attachment and Garnishment was issued on September 26 in the amount of $2,589,433.37, reflecting only the amount sought in the principal claims. By letter dated September 28, plaintiff sought to amend the September 26 Order to reflect the full sum initially requested. That request was denied by memo endorsement dated September 28.

On October 2, plaintiff applied for an Amended Ex Parte Order for Process of Maritime Attachment and Garnishment, naming an additional defendant and ostensibly providing in an Amended Complaint legal and factual support for the interest and costs it sought. Among the cases cited by plaintiff in the Amended Complaint was T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,

415 F. Supp. 2d 310 (S.D.N.Y. 2006).  Count I of the Amended Complaint was based on an indemnity claim arising under the Inter-Club New York Produce Exchange Agreement of 1996 and the law of England, which the parties concede bind them.

On October 17, defendants filed a Proposed Order to Show Cause why an order vacating the Ex Parte Order of Attachment should not issue, based on case law from the Southern District of New York suggesting that a maritime attachment should not have issued on plaintiff's indemnification claim.  In support of their Order to Show Cause, defendants cited Sonito Shipping Co. Ltd. V. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Bottiglieri Di Na Vigazione Spa v. Tradeline LLC, 472 F. Supp. 2d 588 (S.D.N.Y. 2007), and T&O Shipping Ltd.  These cases, defendants contended, suggest that plaintiffs' claims were unripe and therefore did not support a valid prima facie maritime claim under Supplemental Maritime Rule B.  See Seaplus Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 318 (S.D.N.Y. 2005)("As the language of Supplemental Rule B indicates, it is mandatory that the order of maritime attachment issue once this prima facie showing has been made."); see also Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

A conference was held on October 17 to address defendant's Order to Show Cause.  Representing plaintiff at the conference

3

was Jon Werner, an associate of Lyons & Flood, LLP.  At the conference, plaintiff's counsel observed that there was a split of authority in the Southern District of New York -- "cases on both sides," in his words -- concerning the viability of contingent indemnity claims on Ex Parte Orders for Maritime Attachment.  In support of plaintiff's position, counsel cited Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., (S.D.N.Y. 2007), which held that an indemnity claim was ripe, and therefore a valid prima facie basis for a maritime attachment order.  The Court expressed its displeasure with counsel's failure to cite the adverse authority.  The October 17 Amended Ex Parte Order was vacated, and the October 12 Ex Parte Order was reissued in the amount of $178,582.05 only, representing the sum sought for the hire claim in Count Three of plaintiff's Amended Complaint.  A briefing schedule was set for plaintiff's renewed application for attachment.

DISCUSSION

Under Canon 7 of the Code of Professional Responsibility, a lawyer must represent his client zealously but within the bounds of the law.  See Code of Prof'l Responsibility Canon 7.  One aspect of this responsibility is the duty to inform the court of authority adverse to the client's position: New York Disciplinary Rule 7-106 requires that, "[i]n presenting a matter to a tribunal, a lawyer shall disclose . . . [c]ontrolling legal

authority known to the lawyer to be directly adverse to the position of the client and which is not disclosed by opposing counsel." Discip. R. 7-106(b)(1), 22 N.Y. Comp. R. & Regs. § 1200.37(b)(1) (McKinney 2003); see also Hernandez v. Jones, No. 92 Civ. 2451 (MGC), 1993 WL 323820, at *4 n.8 (S.D.N.Y. Aug. 6, 1993) (observing that the failure to cite controlling authority is "at best inexcusably poor lawyering and at worst suggests counsel's ignorance or violation of Disciplinary Rule 7-106(B)(1)"). "In an ex parte proceeding, in which the adversary system lacks its usual safeguards, the duties on the moving party are correspondingly greater." Time Warner Entertainment Co., L.P. v. Does Nos. 1-2, 876 F. Supp. 407, 415 (E.D.N.Y. 1994). See Model Rule of Professional Conduct 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

Plaintiff's counsel does not dispute that the three cases cited by the defendants and mentioned above are adverse authority to its Amended Ex Parte Application.[1]  Rather, counsel's reply to the Court's October 17 Order boils down to a

---

[1]   Counsel's assertion that it had a good faith basis for plaintiff's claim, based on Navalmar, is unavailing because it does nothing to diminish counsel's obligation to alert the court to the existence of adverse authority.

claim that in other ex parte maritime actions in the Southern District where indemnity claims were at issue, the parties seeking ex parte relief rarely if ever cited adverse Southern District authority. Plaintiff's counsel refers to this as "the apparent practice in cases involving indemnity claims arising under English law and the Inter-Club Agreement." This argument has no merit whatsoever. An experienced lawyer hardly must be advised that two wrongs do not make a right.

Plaintiff's counsel's behavior is particular egregious in light of the fact that it cited T&O Shipping in its Amended Complaint in support of its claim for interest and costs, but declined to mention the case's holding with respect to indemnification claims. Furthermore, it bears mentioning that Navalmar, upon which plaintiff relied at conference and in its response to the October 17 Order, makes specific mention of the split in Southern District authority on the viability of indemnification claims, and cites both Sonito Shipping and Bottiglieri. See Navalmar, 485 F. Supp. At 404.

In another context, the Supreme Court warned that ex parte proceedings, "untrammelled by the safeguards of a public adversary judicial proceeding, afford too ready opportunities for unhappy consequences to prospective defendants . . . ." United States v. Minker, 350 U.S. 179, 188 (1956). Given this potential for injustice, counsel for parties seeking ex parte

relief must therefore be particularly attentive to their role as an "officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." <u>Mallard v. U.S. Dist. Ct. for the So. Dist. of Iowa</u>, 490 U.S. 296, 313 n.4 (1989) (Stevens, J., dissenting) (citation omitted). Because, in an ex parte proceeding, counsel failed to apprise the Court of adverse authority of which it was clearly aware, in violation of its ethical duties, it is hereby

> ORDERED that Kirk M. Lyons, Jon Weber, and all members of the law firm Lyons & Flood, LLP, shall, in cases where the parties are governed by the Inter-Club New York Produce Exchange Agreement of 1996 and the law of England, in any application for ex parte relief based on a contingent indemnity claim, bring to the court's attention the split of authorities in the Southern District of New York concerning the viability of plaintiff's application for maritime attachment.[2]
>
> SO ORDERED.

Dated:   New York, New York
         December 4, 2007

                                    _____
                                         DENISE COTE
                                    United States District Judge

---

[2] The Order circulated to the parties on October 17 was directed towards plaintiff Great Eastern, rather than towards its counsel. Because the order relates to counsel's ethical obligations, and not to plaintiff's, the original order has been amended to refer to counsel.

7