# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                  :

GREAT EASTERN SHIPPING CO. LTD.,    :
                   Plaintiff,    :

                             :    07 Civ. 8373 (DLC)

         -v-             :

                             :    MEMORANDUM
PHOENIX SHIPPING CORPORATION,     :    OPINION & ORDER
and PHOENIX SHIPPING PTY LTD.,    :
                   Defendants.   :
                             :
------------------------------------------X

Appearances:

For Plaintiff:
Kirk M. Lyons
Lyons & Flood, LLP
65 West 36th Street, 7th Floor
New York, New York 10018

For Defendants:
Michael E. Unger
Freehil Hogan & Mahar, LLP
80 Pine Street
New York, New York 10005

DENISE COTE, District Judge:

On October 17, 2007, the Court issued an Order to Show

Cause why the following order (the "Order") should not issue:

> It is hereby ORDERED that Great Eastern Shipping Co.
> Ltd. shall, in cases where the parties are governed by
> the Inter-Club New York Produce Exchange Agreement of
> 1996 and the law of England, in any application for ex
> parte relief based on a contingent indemnity claim,
> bring to the court's attention the split of
> authorities in the Southern District of New York
> concerning the viability of plaintiff's application
> for maritime attachment.

Plaintiff Great Eastern was required to reply to the Order to

Show Cause by November 2.  By letter dated November 2, counsel

for Great Eastern, Kirk M. Lyons of Lyons & Flood, LLP, replied

to the Order to Show Cause.  For the following reasons, the

Order shall issue.

BACKGROUND

On September 26, Great Eastern applied for an Ex Parte

Order for Process of Maritime Attachment and Garnishment in the

amount of $4,089,433.37, representing the sum total of the

principal claims alleged in the complaint as well as interest

and costs.  Because no legal or factual support for the interest

or costs sought was provided with the application, an Ex Parte

Order for Process of Maritime Attachment and Garnishment was

issued on September 26 in the amount of $2,589,433.37,

reflecting only the amount sought in the principal claims.  By

letter dated September 28, plaintiff sought to amend the

September 26 Order to reflect the full sum initially requested.

That request was denied by memo endorsement dated September 28.

On October 2, plaintiff applied for an Amended Ex Parte

Order for Process of Maritime Attachment and Garnishment, naming

an additional defendant and ostensibly providing in an Amended

Complaint legal and factual support for the interest and costs

it sought.  Among the cases cited by plaintiff in the Amended

Complaint was T&O Shipping, Ltd. v. Lydia Mar Shipping Co. S.A.,

2

415 F. Supp. 2d 310 (S.D.N.Y. 2006). Count I of the Amended
Complaint was based on an indemnity claim arising under the
Inter-Club New York Produce Exchange Agreement of 1996 and the
law of England, which the parties concede bind them.

On October 17, defendants filed a Proposed Order to Show
Cause why an order vacating the Ex Parte Order of Attachment
should not issue, based on case law from the Southern District
of New York suggesting that a maritime attachment should not
have issued on plaintiff's indemnification claim. In support of
their Order to Show Cause, defendants cited Sonito Shipping Co.
Ltd. V. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y.
2007), Bottiglieri Di Na Vigazione Spa v. Tradeline LLC, 472 F.
Supp. 2d 588 (S.D.N.Y. 2007), and T&O Shipping Ltd. These
cases, defendants contended, suggest that plaintiffs' claims
were unripe and therefore did not support a valid prima facie
maritime claim under Supplemental Maritime Rule B. See Seaplus
Line Co. Ltd. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316,
318 (S.D.N.Y. 2005)("As the language of Supplemental Rule B
indicates, it is mandatory that the order of maritime attachment
issue once this prima facie showing has been made."); see also
Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d
434, 445 (2d Cir. 2006).

A conference was held on October 17 to address defendant's
Order to Show Cause. Representing plaintiff at the conference

3

was Jon Werner, an associate of Lyons & Flood, LLP.  At the

conference, plaintiff's counsel observed that there was a split

of authority in the Southern District of New York -- "cases on

both sides," in his words -- concerning the viability of

contingent indemnity claims on Ex Parte Orders for Maritime

Attachment.  In support of plaintiff's position, counsel cited

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,

(S.D.N.Y. 2007), which held that an indemnity claim was ripe,

and therefore a valid prima facie basis for a maritime

attachment order.  The Court expressed its displeasure with

counsel's failure to cite the adverse authority.  The October 17

Amended Ex Parte Order was vacated, and the October 12 Ex Parte

Order was reissued in the amount of $178,582.05 only,

representing the sum sought for the hire claim in Count Three of

plaintiff's Amended Complaint.  A briefing schedule was set for

plaintiff's renewed application for attachment.

DISCUSSION

    Under Canon 7 of the Code of Professional Responsibility, a

lawyer must represent his client zealously but within the bounds

of the law.  See Code of Prof'l Responsibility Canon 7.  One

aspect of this responsibility is the duty to inform the court of

authority adverse to the client's position: New York

Disciplinary Rule 7-106 requires that, "[i]n presenting a matter

to a tribunal, a lawyer shall disclose . . . [c]ontrolling legal

authority known to the lawyer to be directly adverse to the
position of the client and which is not disclosed by opposing
counsel." Discip. R. 7-106(b)(1), 22 N.Y. Comp. R. & Regs. §
1200.37(b)(1) (McKinney 2003); see also Hernandez v. Jones, No.
92 Civ. 2451 (MGC), 1993 WL 323820, at *4 n.8 (S.D.N.Y. Aug. 6,
1993) (observing that the failure to cite controlling authority
is "at best inexcusably poor lawyering and at worst suggests
counsel's ignorance or violation of Disciplinary Rule 7-
106(B)(1)"). "In an ex parte proceeding, in which the adversary
system lacks its usual safeguards, the duties on the moving
party are correspondingly greater." Time Warner Entertainment
Co., L.P. v. Does Nos. 1-2, 876 F. Supp. 407, 415 (E.D.N.Y.
1994). See Model Rule of Professional Conduct 3.3(d) ("In an ex
parte proceeding, a lawyer shall inform the tribunal of all
material facts known to the lawyer that will enable the tribunal
to make an informed decision, whether or not the facts are
adverse.").

    Plaintiff's counsel does not dispute that the three cases
cited by the defendants and mentioned above are adverse
authority to its Amended Ex Parte Application.[1]  Rather,
counsel's reply to the Court's October 17 Order boils down to a

------------------------------------------------------------

[1]   Counsel's assertion that it had a good faith basis for
plaintiff's claim, based on Navalmar, is unavailing because it
does nothing to diminish counsel's obligation to alert the court
to the existence of adverse authority.

claim that in other ex parte maritime actions in the Southern

District where indemnity claims were at issue, the parties

seeking ex parte relief rarely if ever cited adverse Southern

District authority.  Plaintiff's counsel refers to this as "the

apparent practice in cases involving indemnity claims arising

under English law and the Inter-Club Agreement."  This argument

has no merit whatsoever.  An experienced lawyer hardly must be

advised that two wrongs do not make a right.

Plaintiff's counsel's behavior is particular egregious in

light of the fact that it cited T&O Shipping in its Amended

Complaint in support of its claim for interest and costs, but

declined to mention the case's holding with respect to

indemnification claims.  Furthermore, it bears mentioning that

Navalmar, upon which plaintiff relied at conference and in its

response to the October 17 Order, makes specific mention of the

split in Southern District authority on the viability of

indemnification claims, and cites both Sonito Shipping and

Bottiglieri.  See Navalmar, 485 F. Supp. At 404.

In another context, the Supreme Court warned that ex parte

proceedings, "untrammelled by the safeguards of a public

adversary judicial proceeding, afford too ready opportunities

for unhappy consequences to prospective defendants . . . ."

United States v. Minker, 350 U.S. 179, 188 (1956).  Given this

potential for injustice, counsel for parties seeking ex parte

6

relief must therefore be particularly attentive to their role as

an "officer of the court, and, like the court itself, an

instrument or agency to advance the ends of justice." Mallard

v. U.S. Dist. Ct. for the So. Dist. of Iowa, 490 U.S. 296, 313

n.4 (1989) (Stevens, J., dissenting) (citation omitted).

Because, in an ex parte proceeding, counsel failed to apprise

the Court of adverse authority of which it was clearly aware, in

violation of its ethical duties, it is hereby

> ORDERED that Kirk M. Lyons, Jon Weber, and all members
> of the law firm Lyons & Flood, LLP, shall, in cases
> where the parties are governed by the Inter-Club New
> York Produce Exchange Agreement of 1996 and the law of
> England, in any application for ex parte relief based
> on a contingent indemnity claim, bring to the court's
> attention the split of authorities in the Southern
> District of New York concerning the viability of
> plaintiff's application for maritime attachment.[2]

> SO ORDERED.

Dated:    New York, New York
          December 4, 2007

                                    _____
                                          DENISE COTE
                                    United States District Judge

---

[2]    The Order circulated to the parties on October 17 was
directed towards plaintiff Great Eastern, rather than towards
its counsel.  Because the order relates to counsel's ethical
obligations, and not to plaintiff's, the original order has been
amended to refer to counsel.